UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS M. BRADLEY, | No. ED CV 05-799-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on August 24, 2005, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 30, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 10, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## BACKGROUND

Plaintiff was born on November 18, 1955. [See Administrative Record ("AR") at 52.] He has a twelfth grade education and past work that includes employment as a network manager. [AR at 17, 63, 68, 78.]

On April 19, 2002, plaintiff filed his current application for Disability Insurance Benefits,[1] alleging that he has been unable to work since February 23, 2002, due to fibromyalgia, depression, and anxiety. [AR at 52-55, 62.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27-30, 32-35, 37.] The hearing was held on May 6, 2004, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 583-603.] A vocational expert also testified. [AR at 603-08.]

On August 27, 2004, the ALJ determined that plaintiff was not disabled because he can perform a significant range of sedentary work. [AR at 16-24.] When the Appeals Council denied review on July 19, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] Plaintiff filed prior applications in 1977, 1978, and on June 27, 1991. The denial of benefits based on these applications is final. [AR at 16.]

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in

the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 17, 23.] At step two, the ALJ concluded that plaintiff has the severe impairments of fibromyalgia and depression, as well as a knee and shoulder impairment. [AR at 19, 23.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform sedentary work activity on a sustained basis. In particular, the ALJ concluded that plaintiff can lift and carry ten pounds, sit for six hours and stand/walk for two hours. Plaintiff is mildly restricted in his activities of daily living, has moderate difficulties in maintaining social functioning and has mild difficulties in concentration, persistence or pace in completing simple repetitive tasks. He can perform simple repetitive tasks in a non-public environment with limited social contact with peers and supervisors. [AR at 20, 23.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 23.] At step five, the ALJ concluded that there are a significant number of jobs in the national economy that plaintiff can perform. [AR at 23-24.] Accordingly, the ALJ found plaintiff not disabled. [AR at 24.]

/

/

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in (1) rejecting the findings of the independent medical examiner, Dr. Mark Jason, and (2) improperly assessing the side effects of plaintiff's multiple medications in evaluating the degree of his mental impairment . For the reasons discussed below, the Court respectfully disagrees with plaintiff and affirms the Commissioner's decision.

**A.  THE ALJ'S REJECTION OF THE OPINION OF DR. JASON**

Plaintiff was referred to Dr. Mark Jason, a rheumatologist, by his attorney on December 12, 2003, for purposes of a disability evaluation. [AR at 522-26.] Dr. Jason concluded that plaintiff could not work due to his multiple medical problems but primarily because of "severe alcohol-related probable organic brain syndrome with evidence of cerebellar damage..."  Dr. Jason found that plaintiff has severe memory problems and was "extremely slow in his ability to respond to simple questions.  He has to think frequently.  He has trouble with dates.  He has trouble with simple calculations and memory."  Nevertheless, Dr. Jason found that plaintiff appeared to be "quite intelligent."   In addition to mental slowness, Dr. Jason found that plaintiff's

> "gait is extremely wide-based, which appears to be cerebellar ataxia. He has difficulty with heel to shin.  He has difficulty with rapid alternating movements in his fingers.  He is unable to stand upright with his hands closed and hands outstretched, and falls to the back and sides, unable to maintain his balance."

[AR at 524-25.]   Dr. Jason concluded that plaintiff

> "is obviously totally disabled, mostly from a combination of severe memory loss, inability to think, and clearly probably related to alcoholic brain disease as well as his severe multiple physical problems involving severe degenerative arthritis in the elbow, neck, knees, and feet.  He also gives a long history of drug abuse in the past and alcoholism in the past, which have probably added up to his mental slowness, which is also manifested by severe depression due to his inability to function appropriately.  I doubt the patient will ever be able to return to work at this point."

[AR at 525.]

Contrasted with the opinion of Dr. Jason are the opinions of Dr. Hans Geisse,  plaintiff's treating physician of many years, Dr. Evan Tzakis, plaintiff's treating psychiatrist of many years, and Dr. David Bedrin, a consultative psychiatrist.

Dr. Geisse wrote on March 28, 2003, that in his opinion, plaintiff, who had been under his care since May 17, 1999, "is physically able to work as long as the intensity of his activity excludes heavy lifting, frequent work above the shoulders, and avoidance of looking up activities on a regular basis." Dr. Geisse concluded by recommending that plaintiff not be placed on permanent disability "since he has the physical capability of performing sedentary work." Dr. Geisse commented on plaintiff's mental impairment as well, noting that plaintiff's "depression is adequately under control, but his behavior appears to be only minimally associated with this condition." [AR at 226.] Dr. Geisse did not indicate the presence of any cognitive impairment or organic brain syndrome.

Plaintiff received psychiatric treatment from Dr. Tzakis for a number of years. [AR at 150-71, 515-20, 570-80.] Like Dr. Geisse, Dr. Tzakis did not believe that plaintiff was disabled by reason of any mental impairment. [AR at 168.] Dr. Tzakis' treatment notes also do not reveal any significant cognitive impairment or impressions of organic brain syndrome.

Plaintiff was also examined by David Bedrin, M.D., for a consultative psychiatric examination on September 19, 2002. [AR at 191-95.] Dr. Bedrin's examination revealed that plaintiff's recent and remote memory were intact. Plaintiff was able to recall three out of three objects at three and five minutes. His immediate recall, however, was mildly impaired. Plaintiff performed serial sevens with loss of concentration, but he was able to regain concentration and continued correctly. His calculation ability was intact. [AR at 193.] Dr. Bedrin concluded that plaintiff had no difficulty understanding and remembering but "[c]arrying out complex job instructions may be impaired secondary to memory and concentration problems." However, plaintiff is capable of following simple one and two-step job instructions. [AR at 194.]

/
/
/
/
/
/

As to plaintiff's physical capacities, the ALJ gave Dr. Geisse's opinion "controlling weight."[3] [AR at 20.] Plaintiff does not dispute the ALJ's physical residual functional capacity assessment. Rather, he argues that the ALJ's rejection of Dr. Jason's opinion "regarding [plaintiff's] impaired mental function" was improperly rejected. Joint Stipulation at 11. However, it is not entirely clear what specific opinion concerning his mental function plaintiff believes was improperly rejected. Even Dr. Jason does not appear to find plaintiff totally disabled based on mental limitations alone but rather on a combination of impairments. [AR at 525].

In any case, the ALJ rejected Dr. Jason's opinions because:

> First, Dr. Jason is not a treating physician and has only seen [plaintiff] for the purpose of preparing this report. Moreover, he stated that [plaintiff] may suffer from an organic brain disorder, yet he did not administer any objective tests. Additionally, although he notes many neurological deficits, there is no indication in any of [plaintiff's] treating records that he has these problems, not even in his most current records. I note that Dr. Geisse, who knows [plaintiff] well, stated that [plaintiff] is passive aggressive regarding his treatment. I find that [plaintiff] exaggerated his limitations and symptoms when he visited Dr. Jason as his limitations are much more severe than what is documented in any of these voluminous treating records.

[AR at 21.]

20 C.F.R. § 404.1527(d) outlines a hierarchy of medical opinion. The opinion of a <u>treating</u> physician is generally entitled to greater weight than the opinion of an examining, but non-treating physician. The opinion of an examining physician, in turn, is entitled to greater weight than the opinion of a physician who has not examined the claimant. This does not mean, however, that even the opinion of a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989), <u>citing</u> <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 & n. 7 (9th Cir.1989). However, if the ALJ chooses to reject the opinion of a treating physician in favor of that of an examining but non-treating

---

[3] 20 C.F.R. § 404.1527(d)(2) provides that if the Commissioner "find[s] that a treating source's opinion on the issue(s) of the nature and severity of [an individual's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." The ALJ found that the opinion of Dr. Geisse was consistent with the medical record as a whole and accorded Dr. Geisse's opinion controlling weight. [AR at 20.]

7

physician whose opinions are based on the same clinical findings as those of the treating physician, the ALJ must cite specific and legitimate reasons for doing so. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002), citing Magallanes, 881 F.2d at 751 ("Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); Andrews, 53 F.3d at 1041 ("Where ... a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

Specific and legitimate reasons are also required for the ALJ to reject the examining physician's opinion in favor of that of a non-examining physician. Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) ("In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record."); Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002), quoting Lester, 81 F.3d at 830-31 ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for 'specific and legitimate reasons that are supported by substantial evidence in the record.'").

Thus, the opinion of a physician higher up in the hierarchy established in 20 C.F.R. § 404.1527(d) can be rejected in favor of those lower in the hierarchy by specific and legitimate reasons. Plaintiff has cited no authority for the proposition that the ALJ must provide specific and legitimate reasons for rejecting the opinion of an examining physician, such as Dr. Jason, in favor of the opinion of a treating physician, such as Dr. Geisse and Dr. Tzakis, nor has he cited any authority for the proposition that specific and legitimate reasons are required to reject the opinion of an examining physician in favor of that of another examining physician such as Dr. Bedrin.

1 Rather, plaintiff merely argues that the rejection was improper without setting out the standards
2 by which the rejection should be judged. In any case, plaintiff's argument is not persuasive.
3       First, inasmuch as Dr. Bedrin's opinion is based upon his independent clinical findings that
4 differ from those of Dr. Jason, it is for the ALJ to resolve the conflict. See Andrews, 53 F.3d at
5 1041.
6       Moreover, even assuming that the ALJ were required to provide a rationale for rejecting
7 Dr. Jason's opinion, the ALJ has more than satisfied this burden.
8       Plaintiff, however, argues that the fact that Dr. Jason did not treat him is irrelevant.
9 "Contrary to the ALJ's suggestion, the purpose for which a medical report is obtained does not
10 provide a legitimate basis for its rejection." Joint Stipulation at 12. Even so, in noting that Dr.
11 Jason is not a treating physician but rather one consulted for the sole purpose of obtaining a
12 disability evaluation, the ALJ was merely identifying Dr. Jason's status as that of an examining
13 physician, which, obviously, is quite relevant in determining the weight accorded to his opinion.
14       Plaintiff next contends that the fact that Dr. Jason performed no objective tests to further
15 explore his mental slowness "is of no logical or legal relevance to the issue of whether the doctor's
16 mental function findings are have [sic] an adequate medical basis." Joint Stipulation at 12.
17 Plaintiff relies on Dr. Jason's clinical evaluation and argues that the precise etiology of the
18 abnormal findings "is not determinative of whether the functional impairments that flow from that
19 condition are valid." Plaintiff further argues that the ALJ erred "in assuming that the law requires
20 proof of an impairment by objective diagnostic criteria." Joint Stipulation at 12-13. While it is true
21 that "[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective
22 laboratory findings" (Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)), on the other hand,
23 the mere fact that an individual has subjective complaints and even exhibits some findings during
24 a one-time examination is not proof of a medically determinable impairment, in this case,
25 "probable organic brain syndrome." [See AR at 525.] Ukulov v. Barnhart, 420 F.3d 1002 (9th Cir.
26 2006) (in affirming a step two determination, the Court found that "[b]ecause none of the medical
27 opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to
28 meet his burden of establishing disability....").

In plaintiff's case, as noted by the ALJ, Dr. Jason's findings of neurological deficits is not corroborated in claimant's previous treatment records. [AR at 21; see, e.g., AR at 106, 116, 126, 130, 138, 547-48; see also AR at 177-78.] However, shortly after seeing Dr. Jason, plaintiff went to his primary care physician, Dr. R. David. He told Dr. David that he had seen a physician for memory loss and gait/balance problems. Although Dr. David noted a wide-base gait and a lean to the right when ambulating, plaintiff's neurological examination was otherwise intact, and no deficits in memory or cognitive functioning were observed. However, Dr. David agreed that organic brain syndrome should be ruled out, and he also assessed that there might be some aggravation of plaintiff's problems due to medication side effects. [AR at 536.] Dr. David recommended a neurological consult and a CT of the brain. [AR at 536.] There is no record of a neurological consult, and the CT of the brain was negative. [AR at 530.] There are no further records concerning plaintiff's physical complaints, and the post-hearing psychiatric evidence submitted to the Appeals Council, while evidencing complaints of depression, reveal no significant complaints or findings of ongoing diminished cognitive functioning. [See AR at 570-73, 575, 577, 578.]

Last, plaintiff argues that the ALJ's third and fourth reasons for rejecting Dr. Jason's opinion "are based in the similar underlying assumption that [plaintiff] somehow 'exaggerated his limitations and symptoms when he visited Dr. Jason' (AR 21)." He argues that such an assumption is without factual basis as is the assumption that "Dr. Jason was not astute enough to notice" any deliberate feigning of symptomotology. Joint Stipulation at 13. However, the ALJ inferred that there was an exaggeration of symptoms based on the lack of corroborative findings in the treatment record. Plaintiff's argument, moreover, assumes that plaintiff's multiple treating physicians, including a treating psychiatrist, were not astute enough to notice throughout years of treatment that plaintiff was as cognitively impaired as Dr. Jason implies.

As further support for his rejection of Dr. Jason's opinions, the ALJ also cited the fact that Dr. Jason is not a neurologist or a psychiatrist but a rheumatologist. [AR at 21.] See 20 C.F.R. § 404.1527(d)(5)("[The Commissioner] generally give[s] more weight to the opinion of a specialist

about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

In short, there was no impropriety in the ALJ's rejection of Dr. Jason's opinions. It was within his province to resolve the conflicting opinions of two examining physicians. Even were the ALJ required to cite reasons, specific and legitimate or otherwise, for rejecting Dr. Jason's opinions, the ALJ has met his burden by citing the lack of objective findings (see Ukulov, 420 F.3d at 1005-06), by citing the inconsistency between Dr. Jason's findings and opinions with the treatment record (Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (the ALJ properly discounted the opinion of a treating physician in part because "[h]is conclusions also had multiple inconsistencies with all other evaluations")), and by noting Dr. Jason's lack of specialization in the field in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(5).

**B.    SIDE EFFECTS OF MEDICATION**

Plaintiff takes multiple medications for pain and depression such as morphine, Vicodin, Desyrel (Trazodone),[4] Paxil and Klonopin. Joint Stipulation at 19. Plaintiff testified that this medication makes him tired. [AR at 599.] Plaintiff cites Dr. Jason's opinion that plaintiff's mental difficulties "are likely aggravated by his medications." Joint Stipulation at 19; see AR at 525. Plaintiff also argues that "[i]t has been well-established that all three of the psychotropic medications that [plaintiff] has been taking since at least the onset of his disability have caused somnolence in statistically significant numbers of users." Joint Stipulation at 19. As support for his claims of debilitating side effects, plaintiff notes that both Dr. Jason and Dr. Bedrin, the consultative psychiatrist, found that plaintiff had memory and concentration difficulties. Plaintiff contends that although the ALJ concluded that plaintiff had mild difficulties in concentration, persistence and pace, "[n]owhere in his decision, however, did he specifically address the issue of the side effects imparted by his multiple medications" and that "[h]is failure to incorporate these

---

[4]    Desyrel is a trademark for Trazodone. Dorland's Illustrated Medical Dictionary, 485 (29th ed. 2000).

1 side effects into his residual functional capacity analysis constitutes error." Joint Stipulation at 19, 20.

Plaintiff's arguments are unavailing. First, whether the deficits in concentration he has are attributable to his mental impairment or to side effects of medication does not mean that he is any more limited than as found by the ALJ. Regardless of the cause, Dr. Bedrin still found plaintiff capable of following simple one and two-step job instructions. [AR at 194.]

Moreover, even accepting plaintiff's testimony that the medications make him tired does not mean that he is debilitated or significantly impaired by the side effects of medication. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work. When the ALJ asked Mr. Osenbrock to specify the most significant side effect from all the medications he took, Mr. Osenbrock stated "dozing off" and "dry mouth.").

In plaintiff's case, however, what passing references there were to side effects were denials. [AR at 232.] When Klonopin was added to his medication regimen in February, 2003, plaintiff was specifically cautioned about the risks of sedation, addiction, poor coordination and judgment. [AR at 519.] Nevertheless, the only complaint plaintiff offered about Klonopin was his belief that it made him restless. [AR at 517.] However, upon resuming Klonopin, no further complaints are noted. [AR at 516.] As for Paxil, plaintiff specifically denied any side effects. [AR at 577.] The only side effect caused by Trazodone (Desyrel) in the past was a "slight headache." [AR at 570].

Neither is it relevant that "somnolence" is an oft-reported side effect of plaintiff's psychotropic medications. Nothing in the statistics cited by plaintiff suggest that the somnolence reported by users of Klonopin, Paxil, and Desyrel have rendered the same statistically significant numbers of users "disabled" or even significantly impaired.

/
/
/

## VI.

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 17, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE